**STATE of Tennessee, Appellee,**

v.

**William Kenneth ELROD, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 16, 1986.

Permission to Appeal Denied by Supreme Court Sept. 29, 1986.

W.J. Michael Cody, Atty. Gen. & Reporter, Kevin Steiling, Asst. Atty. Gen., Nashville, John Knowles, Asst. Dist. Atty. Gen., Sparta, Marsha Selecman, Asst. Dist. Atty. Gen., Crossville, for appellee.

Jimmy Reneau, III, Reneau & Reneau, Celina, for appellant.

## OPINION

O'BRIEN, Judge.

In a two count indictment the Grand Jury of Putnam County charged William Kenneth Elrod with solicitation to commit the murder of Karen Lee Elrod, his ex-wife, in the first count, and her father, Ernest Weatherly, in the second count. He was convicted on Count 1 and sentenced to eight (8) years imprisonment. Probation was denied. He was acquitted on Count 2.

A number of issues are raised, by the first of which defendant asserts reversible error was committed when the trial court denied a motion to quash the jury array because the jurors were not selected in accordance with T.C.A. § 22–2–304. Specifically it is charged there were several violations of the statute in that the jury venire was not selected by the Board of Jury Commissioners; was not selected prior to the opening of court as set out in the statute; the names of the prospective jurors were not drawn from the jury box by a child under ten years of age; the jury panel was not certified by the Board of Commissioners in accordance with the statute; the Jury Commissioners failed to report to the court as prescribed in the statute: and a majority of the commissioners did not make a report to the court.

At a hearing on the motion to quash the jury array it was developed that on the date the names were drawn from the jury box for service one of the three jury commissioners was out of town and could not be contacted. A second commissioner, a retired postal worker, had submitted his resignation from the Board of Jury Commissioners due to a purported conflict with the retirement policy of the Postal Department. As a result the names were drawn

from the jury box by the Presiding Judge in the presence of the third commissioner and the Circuit Court Clerk. The report, required to be prepared by the Clerk, signed by the Commissioners, and addressed to the Judge, was signed by the one available commissioner who was present, and the trial judge himself.

■ Defendant does not suggest there has been an infringement upon his constitutional right to trial by an impartial jury. He argues only that the procedure utilized in the selection of the names for jury service was contrary to the statutes and should not be permitted. We agree that the procedure utilized in this case did not conform to the provisions of T.C.A. § 22–2–304. Certainly a trial judge does not have carte blanche to deviate arbitrarily from the prescribed statutory procedure. However, it is plain, the statutory scheme makes provision for such a contingency as occurred in this case. T.C.A. § 22–2–311 specifically provides that if for any reason a legal venire or panel is not furnished the court at any regular or special term as provided by law, then the judge of said court shall have the right to select a venire or panel and such additional jurors as may be needed by the court during said term of court. The procedure employed was proper, the defendant has shown no prejudice and we find the issue without merit.

■ We also find without merit defendant's argument that a juror failed to disclose he was related to the defendant within the sixth degree as proscribed by T.C.A. § 22–1–105.

During the voir dire examination a prospective juror became aware that he was related to a relative of the defendant. Neither the defendant nor the juror were acquainted with each other. The trial court gave counsel the opportunity to examine the witness. Further examination was declined by defense counsel. At the hearing on the motion for new trial proof was offered on defendant's behalf that he and the juror were third cousins. Under the law in this State the defect in question is considered a disqualification *propter defectum*

which is deemed waived if no objection is entered prior to the swearing in of the jury. See *Murphy v. State*, 560 S.W.2d 414 (Tenn.Cr.App.1977). The waiver rule is applicable to prohibited relationships between a juror and one of the parties, despite the fact that a defendant has no knowledge of the defect at the time of the jury's selection. *Murphy*, supra, p. 415. Moreover, defendant has not shown prejudice on this issue.

■ Defendant says an Assistant District Attorney prosecuting the case was a witness to the facts constituting the alleged offenses and should have been excluded from participating in the prosecution of the case. Assistant District Attorney General John Knowles participated in the investigation leading to defendant's indictment. He was listed on the indictment as a prospective witness for the State. He did not testify but did participate in the prosecution. It is the duty of the District Attorney General to prosecute criminal actions on behalf of the State. T.C.A. § 8–7–103. He is furnished assistants to aid him in whatever capacity he finds it necessary to utilize their services in carrying out his duties. See *State v. Taylor*, 653 S.W.2d 757 (Tenn.Cr.App.1983). In conjunction with carrying out these duties the District Attorney General has the inherent duty under the law of Tennessee to investigate all infractions of the public peace and acts which are against the peace and dignity of the State. See *State v. Winstead*, 470 F.Supp. 263 (D.C.Tenn. 1978). The actions of General Knowles in the investigation of this case, including the interrogation of the defendant following his arrest, were a part of his sworn and required duties as an Assistant District Attorney General. There is no merit to this issue.

■ Defendant objects to the manner in which the trial court allowed in evidence tape recordings made of his conversations with an undercover TBI agent during the investigative stages of this case, and the use of transcripts of those tapes. The tape re-

cordings were of very poor quality. Transcripts were made which plainly show numerous inaudible gaps in the recordings. A State's witness testified and related the substance of his conversation with the defendant. He used the transcripts of the tapes. to refresh his recollection. The tapes contained nearly two hours of conversation and the trial judge at first denied defense counsel's request to have the tapes played for the jury. During cross-examination defense counsel asked TBI Agent Dickey to play the parts of the tape where defendant had solicited him to commit the crime of first degree murder on his ex-wife. On re-direct examination the court allowed the State to play the entire tape while the jury referred to a transcript as it was played. It is the duty and obligation of the trial judge to control the method and manner of the submission of evidence to the jury, and he has wide latitude and discretion in determining the nature of the evidence which they are to consider. This discretion will not be disturbed in the absence of some indication of abuse. We do not find any abuse of discretion in this case. There is no doubt that the tape recordings and the transcripts were admissible in evidence. See *State v. Jones*, 598 S.W.2d 209, 223 (Tenn.1980). The weight to be given this evidence was for the jury, as well as the accuracy of the transcript provided to assist them in consideration of the tape. Likewise, defendant's complaint that he was not furnished copies of the transcript along with copies of the tapes themselves in response to a discovery motion is also without merit. Defendant has failed to show in what manner he was prejudiced.

■ It is said the trial court erred in admitting into evidence the statement made by defendant in the absence of an affirmative showing that he had waived his Fifth Amendment right against self-incrimination. There was a hearing on a motion to suppress the statement at the conclusion of which the trial judge found there was clear and convincing evidence that defendant was advised of his rights and knowingly waived those rights and voluntarily gave his statement. Lack of an explicit written waiver of the right to remain silent or the right to counsel after *Miranda* warnings does not per se require exclusion of a confession if waiver can be found from facts and surrounding circumstances. *State v. Robinson*, 622 S.W.2d 62, 67 (Tenn.Cr.App. 1980), cert denied 454 U.S. 1096, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981). The evidence in this record supports the findings of the trial judge.

■ Defendant complains it was error to admit evidence that he was guilty of other uncharged crimes and prior bad acts. The evidence admitted concerned purported allegations by his estranged wife made during divorce proceedings; evidence of drug use by the defendant; and evidence concerning a prior attempt to hire someone to murder his ex-wife. There is no doubt that evidence of allegations concerning sexual abuse and testimony showing a prior bitter divorce proceeding were relevant to the issue of motive. This is also true of evidence showing a prior solicitation effort to have someone commit the homicide. The testimony concerning drug use was error, albeit harmless, particularly in view of other references in the record to defendant's drug use. Moreover, as we have noted, the allegations made by his ex-wife in the divorce proceedings did not amount to actual charges of criminal conduct or bad acts by defendant. The issue is without merit.

Defendant insists his punishment exceeded the limits authorized by T.C.A. § 39–1–404. This statute, in pertinent part, reads as follows:

> Penalties.—(b) A person committing the offense of solicitation of a felony shall be guilty of a felony, and shall be punished as if he had committed an attempt or an assault with intent to commit the most serious felony which was solicited, or any lesser included felony in the discretion of the jury.

He insists that under the statute he could have been punished under T.C.A. § 39–1–501 for a simple attempt, or under T.C.A. § 39–2–102 for assault with intent to commit a felony, each of which carry a mini-

mum penalty of not more than one (1) year in the workhouse, or a maximum not exceeding five (5) years in the penitentiary; or under T.C.A. § 39–2–103 for an assault with intent to commit murder, carrying a penalty of not less than five (5) nor more than twenty-five (25) years.

■ We do not agree with defendant's analysis. Having been convicted of solicitation to commit murder in the first degree under the indictment in this case he could not be punished for any lesser included felony. We do not find the provisions of T.C.A. § 39–1–404 to be ambigious, or vague and indefinite as suggested by the defendant. This offense was committed on March 31, 1983, and so was subject to trial and sentence under the provisions of the Criminal Sentencing Reform Act of 1982, placing on the trial judge the duty to impose sentence. T.C.A. § 40–35–112. The record of the sentencing hearing contains only the barest bones of a finding of fact upon which application of the sentencing principles were based. T.C.A. § 40–35–209(c)–T.C.A. § 40–35–210(c). The court found defendant to be a Range I Standard Offender. The sentence range for such an offender is fixed by statute to be not less than the minimum sentence established by law and not more than the minimum sentence plus one-half of the difference between the maximum sentence and the minimum sentence. It seems to be conceded in the record that the sentence range was between five (5) and fifteen (15) years. The record indicates the judge considered confinement to be necessary to avoid deprecating the seriousness of the offense and also as an effective deterrence to others. The language employed in his findings also made it plain that the sentence imposed was no greater than that deserved for the offense committed. He also considered the potential for rehabilitation. He fixed a sentence of eight (8) years, close to the minimum range for the offense, and declined to grant probation.

Under the provisions of the Tennessee Comprehensive Correction Improvement Act, Ch. 5, § 31, Public Acts, 1st Ex.Sess.

1985, the appellate courts are required to conduct a de novo review of sentencing issues raised in accordance with T.C.A. § 40–35–402. We have followed the statute as required and conclude the sentence fixed by the trial judge is appropriate. Under the Criminal Sentencing Reform Act of 1982, as amended, defendant's release eligibility status is calculated at thirty percent (30%) of the actual sentence imposed. By virtue of the Correction Improvement Act of 1985 amendments defendant is almost immediately eligible for accelerated release and assignment to work, educational and vocational training programs within the system. We do not find any extreme mitigating factors in the commission of this offense. There were enhancement factors involved.

We affirm the judgment of the trial court including the sentence as fixed, and the denial of probation.

DUNCAN, J., and ROBERT BURCH, Special Judge, concur.