**STATE of Tennessee, Appellee,**

v.

**Clark LYNN, Appellant.**

Supreme Court of Tennessee,
at Nashville.

June 10, 1996.

Robert S. Peters, Swafford, Peters & Priest, Winchester, for Appellant.

Charles W. Burson, State Attorney General and Darian B. Taylor, Assistant Attorney General, Nashville, for Appellee.

## OPINION

WHITE, Justice.

In this case we must determine what effect a total failure to follow statutory jury selection procedures has on a criminal jury trial. Under the circumstances here, we conclude that the failure to comply with those important procedures was prejudicial to the admin-

istration of justice. Consequently, we reverse the conviction and remand this case for a new trial. We discuss the other issues raised on appeal in the event they reoccur on retrial.

## FACTS

Appellant, Clark Lynn, was charged with the first-degree murder of Joe Webb who was killed when he was struck from behind during an altercation at Lynn's Warren County tavern. When the first trial resulted in a mistrial, the state amended the indictment and charged Lynn with second-degree murder. A new trial was scheduled to begin on November 18, 1992. Before the trial, the judge conducted a hearing regarding allegations of jury tampering. Ultimately, the judge found evidence that the entire venire was tainted. Without notice to either side, the judge directed the clerk to draw new names for a venire from which jurors would be selected.

On either November 5 or 6, the clerk of the court took the jury box into his office, unsealed it, and drew sufficient names to constitute a special jury panel. The sheriff summoned the new jurors. On November 15, defense counsel learned that an entirely new venire had been impaneled.[1] On November 16, counsel filed a motion to challenge the selection procedures, to quash the special jury panel, and to request a list of the new jurors. On November 18, before the beginning of jury selection, the clerk provided counsel with a list of the jurors. Selection commenced and was completed on November 19.

Before swearing the jury, the trial judge heard arguments on defendant's motion to quash the special panel.[2] Over the state's objection, the trial judge accepted defense counsel's suggestion that he defer the deci-

sion until the trial was completed.[3] After a five-day trial, the jury convicted Lynn of criminally negligent homicide. Lynn was sentenced to two years as a Range 1 standard offender.

In the motion for new trial, defense counsel challenged the impaneling procedure and other rulings. At the hearing on the motion for new trial, defense counsel presented the clerk's testimony. The court denied the motion.

On direct appeal, the Court of Criminal Appeals affirmed the trial court's judgment. The court concluded that violations of the statutory procedure for selecting, summoning, and impaneling the jury were of no consequence. Furthermore, the court concluded that substantial, albeit not technical, compliance with Tennessee Rules of Criminal Procedure 24(g) had been accomplished.

## ANALYSIS

■ We granted appellant's application for permission to appeal to consider whether a verdict rendered by a jury impaneled in direct contravention and violation of state law must be set aside despite the absence of proof of actual prejudice. Because strict adherence to statutory jury selection procedures is essential to the integrity of the judicial process and the instilling of public confidence in the administration of justice, we hold that proof of actual prejudice is not required in circumstances such as this when the deviation is flagrant, unreasonable, and unnecessary.

### A. Selection of the Special Venire

■ The clerk, the state, the defendant, the Court of Criminal Appeals, and this Court agree that the prescribed procedures for impaneling a jury once an existing panel is disqualified or determined to be inade-

---

1. The record does not disclose how defense counsel learned of the existence of the new venire.

2. It is apparent from the arguments that the judge and counsel had discussed the impaneling procedures prior to the actual hearing, as defense counsel references the "earlier conference."

3. The dissent deems this trial strategy on the part of the defense to have invited, and therefore excused, the resulting error. Because of the fundamental nature of the error and the overwhelming importance of jury selection procedures, we cannot agree. While we do not sanction the strategy, neither can we ignore wholesale deviation from the prescribed procedures.

quate were not followed in this case. The procedures, set out in Tennessee Code Annotated Section 22–2–308, are as follows:

> (2) In the event by reason of the disqualification of proposed jurors, or other cause, the required number of jurors cannot be obtained from the venire, the clerk of the court shall produce in open court the jury box, and the box shall be opened by the court and there shall be drawn therefrom, as directed by the court, the number of names deemed by the judge sufficient to complete the juries. This process shall, if necessary, continue until the grand and petit juries are completed; but the judge of the court instead of following the last mentioned procedure may, if the judge shall deem proper, furnish a sufficient number of names of persons to be summoned to the sheriff, or the judge may, if the judge thinks proper, direct the sheriff to summon a sufficient number to complete the juries.

Tenn.Code Ann. § 22–2–308(a)(2) (1994 Repl.).[4]

Thus, the statute describes three procedures which may be used to replenish or impanel a jury. The trial judge has discretion to choose between the three, but if the judge does not select the second or third option, the first is mandatory. That option requires the court clerk to produce the jury box in open court where the judge is required to open it and direct the drawing of sufficient jurors.[5]

None of these procedures were followed in this case. The clerk, not the judge, opened the box. The box was opened in the clerk's office, not in open court and not in the presence of the judge. The clerk, not the judge, drew the names and resealed the box. Neither party was advised that a new panel was being drawn. These circumstances, unlike those present in prior cases, are not an insignificant departure from technical statutory requirements. Rather, they represent a complete deviation from the directives established by our legislature.

The circumstances presented by previous cases involving the jury impaneling procedure have seldom impacted the integrity of the selection of an entire venire. None of this Court's prior decisions involve a situation in which the established statutory procedures for the selection of a venire were totally disregarded. Consequently, none are controlling in this case.

Three of our prior venire selection cases involve the propriety of excluding certain classes from jury service. In *Rutherford v. State,* 219 Tenn. 331, 409 S.W.2d 535 (1966), defendant argued that the jury commissioners had exceeded their authority by excluding certain classes of persons from the jury list without statutory authority. 409 S.W.2d at 536. Although the commissioners had, in fact, exceeded their authority by the exclusions, Rutherford was denied relief since counsel failed to object before the jury was sworn.[6] 409 S.W.2d at 536.

In *State v. Strouth,* 620 S.W.2d 467 (Tenn. 1981), defendant argued that the selection procedure and its statutory basis systemat-

---

**4.** The procedures outlined in Section 22–2–308(c) which allow the clerk to draw names "in the judge's presence, in the clerk's office" apply only "before the case is assigned for hearing." Tenn.Code Ann. § 22–2–308(c)(1994 Repl.).

**5.** Although Section 22–2–308 does not establish any particular procedures for actually drawing the names, Section 22–2–304, a part of the same chapter, requires that the box be "well-shak[en]" and that the names be drawn either "by a child under ten (10) years of age or by a person who is securely blindfolded." Tenn.Code Ann. § 22–2–304(a)(1) (1994 Repl.). Statutes are read "in pari materia." Therefore, absent some indication that these provisions are not applicable to Section 22–2–308, the new names should be drawn according to that statute. Once a suffi-

cient number of names are drawn, the judge of the court "shall cause [the jury box] to be relocked by the clerk and sealed, and the judge shall write the judge's own name across the seal. . . ." *Id.* at –308(b).

**6.** Tennessee Code Annotated Section 22–239, retained in its entirety as Tennessee Code Annotated Section 22–2–313, provided that "[i]n the absence of fraud, no irregularity with respect to the provisions of this part or the procedure thereunder shall affect the validity of any selection of any grand jury, or the validity of any verdict rendered by a trial jury unless such irregularity has been specially pointed out and exceptions taken thereto before the jury is sworn." Tenn. Code Ann. § 22–2–313 (1994 Repl.)(formerly Tenn.Code Ann. § 22–239).

ically excluded women from jury service. 620 S.W.2d at 470. The Court denied relief finding that women were fairly represented on the jury.[7] *Id.* More recently, in *State v. Bell,* 745 S.W.2d 858 (Tenn.1988), this Court upheld the exemption statutes in the face of a challenge that the statutes deprived defendants of juries drawn from a fair cross-section of the community. 745 S.W.2d at 860–861 (upholding Tenn.Code Ann. §§ 22–1–102 *et seq.* (1994 Repl.)). As this review aptly demonstrates, none of these cases involved a disregard for statutory procedures that were designed to protect the integrity of the jury selection process.

In three reported decisions, the Court of Criminal Appeals has addressed irregularities of venire selection procedures. *See State v. Boyd,* 867 S.W.2d 330 (Tenn.Crim.App. 1992), *perm. to appeal denied,* 1993 WL 64234 (Tenn.1993); *State v. Elrod,* 721 S.W.2d 820 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1986); *State v. Wiseman,* 643 S.W.2d 354 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1982). The most recent, *State v. Boyd,* resolved a challenge to a Hamilton County jury procedure established by local act. It is irrelevant to the issues in this case. 867 S.W.2d at 337. *State v. Wiseman* involved a challenge to grand jury selection procedures. 643 S.W.2d at 358. Several deviations were alleged, including the failure to swear a deputy sheriff to keep the writ of venire facias secret and the failure to have the deputy sign the original of the facias when it was released to him. *Id.* at 358–359. The court deemed the deviations to be minor and found substantial compliance with the statute. *Id.* at 359–361.

In the case most similar to this one, *State v. Elrod,* two of the three jury commissioners were absent when the names were drawn from the box. 721 S.W.2d at 821. One of the commissioners had resigned. The clerk was unable to reach the second commissioner who was out of town. *Id.* As a result, the presiding judge drew the names in the presence of the remaining commissioner and the clerk of the court. The commissioner and the judge signed the report. *Id.* The court

upheld this necessary method of selection of the venire. *Id.* at 822.

■ The circumstances in *Elrod* differ significantly from those in this case. *Elrod* did not involve the selection of a special venire. The clerk did not draw the names in secret. 721 S.W.2d at 821. Rather, the judge in *Elrod* exercised his statutory discretion and followed the statutory procedures to the extent possible under the circumstances. *Id.* at 822. Even given the limited deviation, the Court of Criminal Appeals emphasized in *Elrod* that "a trial judge does not have carte blanche to deviate arbitrarily from the prescribed statutory procedure." *Id.*

We wholeheartedly agree. As we recently stated:

> [r]ules prescribing jury selection procedures are intended to protect the integrity of the jury system by providing a uniform and ordered method that ensures the accused a fair and impartial jury chosen from a fair cross-section of the community.... Compliance with the procedure set forth [regarding selection of a petit jury] safeguards the judicial process and protects the administration of justice.

*State v. Coleman,* 865 S.W.2d 455, 458 (Tenn. 1993) (citations omitted). In the recent case of *State v. Coleman,* the trial judge had instituted a jury selection procedure which was inconsistent with Rule 24(c) of the Tennessee Rules of Criminal Procedure pertaining to petit juror selection. We granted no relief to defendant who did not establish prejudice, but cautioned that "any further deviation ... could constitute prejudice to the entire judicial process and require reversal." *Id.* The deviation from Rule 24 petit jury selection procedures present in that case was slight in comparison to the deviations in venire selection here. Yet, we recognized there, and we must emphasize even more so here, the seriousness of any departure from mandated jury selection procedures.

## B. Publication of List

■ Appellant also challenges the clerk's failure to publish the names of the special panel as required by Tennessee Code Anno-

7. Three of the members and both of the alternates were women. 620 S.W.2d at 470.

tated Section 22–2–306(b). The intermediate court concluded that providing counsel with a list on the day of trial constituted substantial compliance. We respectfully disagree.

In criminal cases clerks are required to prepare two different jury lists. Tennessee Code Annotated Section 22–2–306 provides that five days prior to the appropriate term of court,

> the clerks of the criminal and circuit courts or the jury commissioners shall publish a true copy of the regular jury panel list, and **shall amend it as new names are added.** A copy of such jury panel list shall be posted in the clerk's office for **public inspection.** In addition thereto, the clerks of the criminal and circuit courts or the jury commissioners shall cause to be made a sufficient number of copies of such jury panel list, which copies shall be placed in the clerk's office and available for general distribution to **the members of the bar and to all other interested parties.**

Tenn.Code Ann. § 22–2–306(b)(1994 Repl.)(emphasis added). In addition to the statutory list, Rule 24(g) of the Tennessee Rules of Criminal Procedure requires that a second list be provided to counsel after the summoned jurors have responded to a questionnaire.

The clerk fully complied with Rule 24(g) in this case. That rule, which applies to criminal cases only, requires the clerk to furnish to defense counsel, upon request, a list containing the names of the summoned jurors and other detailed information. The list must be provided on the day of trial. Tenn. R.Crim. P. 24(g). Here, defense counsel requested a copy of the list two days before the trial. The clerk provided the list as required on the day of trial.

■ It is important to note, however, that the Rule 24(g) list is not the same as the jury panel list which must be published and posted under the statute. One does not substitute for the other. The list required by the statute and that required by the rule have different contents and serve different pur-

poses. The list required by the statute is provided for in the code sections detailing the jury selection process. Its purpose is to provide notice to the public that a venire has been selected. It promotes confidence in the judicial process by subjecting the process to public scrutiny. Public disclosure provides scrutiny which further secures that proper juror selection methods will be used.

The rule 24 list, on the other hand, is designed to make voir dire more efficient by providing basic information before counsel questions individual jurors. The comment accompanying the rule states that "[t]he identity of and minimal information about each member of the jury panel available upon request should save time by shortening the voir dire." Tenn. R.Crim. P. 24(g), Advisory Comm'n Comments.

■ We recognize that our courts consistently analyze Rule 24(g) errors under the harmless error rule. *See State v. Harris,* 839 S.W.2d 54, 66 (Tenn.1992); *State v. Poe,* 755 S.W.2d 41, 46 (Tenn.1988); *State v. Strouth,* 620 S.W.2d 467, 470–471 (Tenn. 1981); *State v. Simon,* 635 S.W.2d 498, 506 (Tenn.1982); *State v. Stapleton,* 638 S.W.2d 850, 858 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1982). On the other hand, we are less inclined to employ such an analysis when mandatory statutory requirements with important purposes essential to the integrity of the system are bypassed by elected officials. The harmless error doctrine in the Rule 24 context is often used when defense counsel claims that Rule 24(g) was violated but then fails to exhaust the available peremptory challenges. That analysis does not square with a Section 22–2–306(b) violation.[8] While a violation of Section 22–2–306(b) might be harmless in some contexts, it is not here.

■ The selection of a special venire does not eliminate the statutory publication requirements. In fact, Section 306 specifically requires that the published and posted list be amended as new names are drawn. Tenn. Code Ann. § 22–2–306 (1994 Repl.). Here,

8. Exercising or failing to exercise peremptory challenges does not cure an illegal selection of a special venire. Even if all peremptories are ex- hausted, the remaining jurors would still be members of an improperly selected venire.

the list of the special venire was not published or posted. This omission casts a further pall upon the integrity of the jury selection process in light of the trial judge's determination that the first venire was tainted. In future cases requiring the selection of a special venire, clerks should strictly adhere to the posting and publishing requirements of Section 22–2–306.

■ The integrity of the judicial process is prejudiced by the deviation from mandatory statutory procedures affecting the selection and publication of members of a special venire. Unlike *Wiseman* and *Elrod,* where the deviations from statutory procedure were relatively minor and were either inadvertent or necessitated by circumstances beyond the court's control, the selection method here totally disregarded the law. No attempt was made to publish or post the names of the special venire. Furthermore, no circumstances required the modification of statutory procedure.

We do not question the integrity of the court officials in this case. Undoubtedly, their motives and intentions were honorable. We acknowledge that they were called upon to perform an infrequently used procedure, that of impaneling a special venire. Nonetheless, the statutes are explicit. The procedures required are detailed. This judicial proceeding had already been discolored by the trial judge's earlier findings of jury tampering. The fundamental principles of impartiality, disinterestedness, and fairness are even more essential in a case, such as this, in which a previous attempt to circumvent fairness has occurred.

Often, the public sees in our justice system something substantially different from what actually exists. It is the appearance that often undermines or resurrects faith in the system. To promote public confidence in the fairness of the system and to preserve the system's integrity in the eyes of the litigants and the public, "justice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 13, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954).

■ With these principles firmly in mind, we hold that the improper and unnecessary deviations from statutory jury selection procedures in this case mandated by Tennessee Code Annotated Sections 22–2–306 and –308 constitute prejudice to the administration of justice. Under such circumstances, defendant's conviction cannot stand. Accordingly, we reverse and remand for a new trial.

## C. Other Issues

Defendant has raised two other issues which will be discussed briefly, as they may well arise upon retrial.

■ The first is an evidentiary issue. Defendant challenges the introduction of hearsay references to a baseball bat contained in paramedical and medical records. Since it is unlikely that the same events will occur during retrial, we need not detail the complicated and unusual context in which the issue arose. However, for guidance, we note that Tennessee Rules of Evidence 803(4) permits the introduction of statements made for the purposes of medical diagnosis and treatment. The rationale for that exception to the hearsay rule is that persons who are seeking medical diagnosis and treatment will make reliable statements to assure proper medical care. *State v. Livingston,* 907 S.W.2d 392, 396 (Tenn.1995). The statements are admissible, however, only if they are reasonably pertinent to *both* diagnosis and treatment. *Id.* In this instance, the state's expert witness, a neurosurgeon, testified that, for purposes of treatment, it made no difference whether the victim was hit with a baseball bat or a pool cue. This opinion contradicted that contained in the paramedic report which was admitted over objection. Upon retrial, the trial judge should carefully consider whether the statement in the paramedic's report satisfies the 803(4) requirements.

■ In his last issue, defendant challenges the inclusion of a jury instruction on criminally negligent homicide which he contends is not a lesser included offense of second-degree murder. The Court of Criminal Appeals did not address this issue since counsel had not objected to the proposed charge. However, Rule 30(b) of the Tennessee Rules of Criminal Procedure provides that failure to make objection to the content of an instruction "shall not prejudice the right of a party to assign the basis of the

objection as error in support of a motion for a new trial." Tenn. R.Crim. P. 30(b). This rule is identical to Rule 51.02 of the Tennessee Rules of Civil Procedure which has long been interpreted as allowing a challenge in the motion for new trial for positive errors in the instructions despite the failure to object at trial. *Rule v. Empire Gas Corp.,* 563 S.W.2d 551, 553–554 (Tenn.1978); *Henry County Bd. of Educ. v. Burton,* 538 S.W.2d 394, 397–398 (Tenn.1976). The Court of Criminal Appeals has adopted a similar interpretation of Rule 30(g). *State v. Haynes,* 720 S.W.2d 76, 84–85 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1986). In this instance, defendant challenged a positive error in the jury instructions, not an error of omission. As such, Rule 30 allows the issue to be raised in the motion for new trial.

 The issue, however, is without merit. Criminally negligent homicide is a lesser charge of second-degree murder. *State v. Trusty,* 919 S.W.2d 305 (Tenn.1996). Criminally negligent homicide is also a lesser included offense of second-degree murder pursuant to the definition in *Howard v. State,* 578 S.W.2d 83, 85 (Tenn.1979). *Id.* at 308. Criminally negligent homicide requires that an accused engage in criminally negligent conduct which results in death. Tenn.Code Ann. § 39–13–212 (1991 Repl.). Second-degree murder is a knowing killing of another. Tenn.Code Ann. § 39–13–210 (1995 Supp.). Our criminal code defines the mens rea of criminal negligence as occurring if a person acts intentionally, knowingly, or recklessly. Tenn.Code Ann. § 39–11–301(a)(2)(1991 Repl.). Therefore, an offense that requires that the accused act knowingly necessarily includes offenses in which the accused's mental state was one of criminal negligence. The trial judge properly charged the jury in this case.

## CONCLUSION

For the reasons set forth above, we reverse the conviction and remand for a new trial.

BIRCH, C.J., and ANDERSON and REID, JJ., concur.

DROWOTA, J., dissents.

DROWOTA, Justice, dissenting.

I agree with the majority that the clerk erred in this case by failing to choose the special venire in accordance with Tenn.Code Ann. § 22–2–308(a)(2); I also agree that the clerk erred by failing to publish the names of the venire in accordance with Tenn.Code Ann. § 22–2–306(b). I cannot agree, however, with the majority's conclusion that these errors require reversal of the defendant's conviction. Therefore, I respectfully dissent from the majority opinion.

As noted by the majority, it is undisputed that defense counsel, on November 16, 1992, filed a motion challenging the procedures by which the special panel had been selected. This motion contained, moreover, a specific request that the trial court quash the special panel. After the process of jury selection was completed, but before the jury was sworn, the trial court heard arguments on the motion to quash. Instead of insisting that the trial court rule upon his motion at that time, however, defense counsel asked the trial court to defer the decision until the trial was completed. The trial court accepted this suggestion, over a timely objection by the State. It was only *after* his client was convicted that defense counsel, in his motion for new trial, demanded that the trial court rule upon the issue.

It is clear, therefore, that defense counsel could have secured a ruling on this issue before the trial even began. That he did not do so can only be explained, in my opinion, in terms of trial strategy: counsel wished to delay obtaining a ruling in order to preserve a ground for appeal in case his client was convicted.[1]

This sort of "trial strategy," however astute, is directly contrary to Tennessee law, for it is well established that an appellant "will not be permitted to take advantage of

---

1. Even if defense counsel had not marshaled all his evidence on this issue as of the date the motion was first argued, he could have asked for a continuance in order to prepare. There was simply no reason to conduct the entire trial before litigating the technical jury selection issues.

errors which he himself committed, or invited, *or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct."* *Norris v. Richards,* 193 Tenn. 450, 246 S.W.2d 81, 85 (1952) (emphasis in original). *See also Gentry v. Betty Lou Bakeries,* 171 Tenn. 20, 100 S.W.2d 230 (1937); *Howard Sober, Inc. v. Clement,* 52 Tenn.App. 115, 372 S.W.2d 202 (1960); *Pickard v. Ferrell,* 45 Tenn.App. 460, 325 S.W.2d 288 (1959); C.J.S. *Appeal and Error* § 745 (1995).

*Norris, supra,* is an excellent example of the "invited error" rule. In that case, the plaintiff brought an action against several defendants after a building collapsed and killed her husband; and the jury returned a verdict of $50,000 in her favor. Although Tennessee law at that time required a single assessment against all defendants jointly sued for a single tort, the jury foreman, when asked to read the verdict, began attributing precise amounts to each of the individual defendants. The trial court interrupted the foreman, telling him that the law forbade such a division; and he asked the foreman to simply give the total amount of damages attributed to all the defendants. The foreman did so, but counsel for each of the defendants made formal exceptions. The defendants then filed a motion for new trial, asserting that the apportionment undertaken by the jury contravened Tennessee law and thus rendered the verdict illegal. The trial court denied the motion.

On appeal, this Court, after citing the "invited error" rule, rejected the defendants' argument. We reasoned that:

If the verdict complained of is illegal, it results more from the counsels' own positive 'neglect' or 'misconduct' than the action of the trial judge in pronouncing judgment upon it. No one could doubt for a moment that had any of the counsel asked leave to poll the jury, or that the jury be permitted to retire and give further consideration to its case, but that request would have been granted. The counsel had it completely in their power to have the jury retire and re-examine their verdict and decide if the amount of damages

should be $50,000, or for a lesser amount against all defendants....

[W]e think it is crystal clear that [counsel] should not be permitted to capitalize on their silence to the prejudice of the trial court.

*Norris,* 246 S.W.2d at 85.

Similarly, here defense counsel "had it fully within his power" to secure a ruling on the jury selection issues before the trial. Yet he chose to postpone the ruling until after the conclusion of a five day trial, thereby making it much more difficult for the trial court to simply throw out the special venire and begin anew. Because such action represents, in my view, a manipulation of the trial court in violation of the above-quoted rule, I would affirm the judgments of the Court of Criminal Appeals and the trial court.