IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. REGGIE RAMONT JONES

**Direct Appeal from the Criminal Court for Haywood County**
**No. 3071      William B. Acree, Jr., Judge**

---

**No. W1999-00898-CCA-R3-CD - Decided August 18, 2000**

---

The defendant was found guilty of aggravated robbery, theft over $10,000 and felonious escape. The trial court merged the theft conviction into the aggravated robbery conviction. Defendant received a ten-year sentence for aggravated robbery and a consecutive one-year sentence for felonious escape. The defendant raises the following issues for review: (1) whether the defendant's prosecution in Haywood County for aggravated robbery, following an acquittal for the same offense in federal court, violated double jeopardy; (2) whether the trial court erred in failing to grant a new trial when it was discovered that a juror had a prior felony conviction; and (3) whether the defendant was improperly convicted of both aggravated robbery and the lesser-included offense of theft. Upon a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

RILEY, J., delivered the opinion of the court, in which TIPTON and WILLIAMS, JJ., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Reggie Ramont Jones.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; Clayburn L. Peeples, District Attorney General; and Theodore H. Neumann, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On December 22, 1997, Carlton Shaw and Alex Jones, defendant's brother, entered the Volunteer Bank in Brownsville, Tennessee. Witnesses testified that the men were wearing long trench coats, masks, hats and gloves. A teller at the bank testified that Jones reached around a customer and pointed a gun at her and demanded money. After Shaw and Jones were given money, they fled the bank and ran across the parking lot near Church Street. Agent Adams of the Tennessee Bureau of Investigation found two coats, several hats, a pink stocking and pieces of a dollar bill in

the alley near the bank. The bank manager testified that the total amount stolen was $14, 292.

Another teller testified that a strange man, later identified as Carlton Shaw, entered the bank earlier in the day and was "looking around." Shaw asked her where he could get a hair cut and then exited the bank.

Following an extensive investigation, the authorities interrogated the defendant. The defendant told F.B.I. Agent Lewoczko that he received a call from his brother, Alex Jones, on the day of the robbery. He stated his brother asked him to pick up Shaw and him on Church Street. The defendant stated that when he arrived at Church Street, neither his brother nor Shaw was there. He then received a call on his cell phone, and his brother told him to come to Shaw's residence. He said that when he picked the two men up at Shaw's house, they informed him they had just robbed the Volunteer Bank and had worn women's clothing, which they discarded in the alley near the bank. The defendant stated that he drove the men to Jackson and rented a room at the Ramada Inn. A night clerk at the Ramada Inn identified a receipt indicating the defendant rented the room. The defendant told Agent Lewoczko he received $500 that evening, and that he later received $490 from his brother. At trial, however, the defendant denied giving much of the information contained in the alleged statement.

The most damning testimony came from Carlton Shaw, who testified that the defendant and defendant's brother planned the robbery. He stated his job was to go in and check the bank out before the robbery and then rob the bank with Alex Jones, who would be armed. He further stated it was the defendant who suggested the two dress in women's clothing, and that the clothing he and Alex Jones used belonged to the defendant's deceased mother. He testified that the defendant took him to the bank so that he could "check it out." Afterwards, he and Alex Jones robbed the bank, ran to Church Street, and hid until the defendant picked them up. Shaw testified that the defendant then drove them to Jackson; defendant rented a hotel room at the Ramada Inn; and the three men split the money from the robbery.

Defendant was first indicted on federal bank robbery charges and was acquitted after a trial. Shortly thereafter, the defendant was arrested on the subject state charges. While at the police station, the defendant fled and escaped custody. He was apprehended approximately fifteen minutes later.

The jury found the defendant guilty of aggravated robbery, theft over $10,000 and felonious escape. He received a ten-year sentence for aggravated robbery and a consecutive one-year sentence for felonious escape. The trial court merged the theft conviction into the aggravated robbery conviction.

## I. DOUBLE JEOPARDY

The defendant first argues that his prosecution for aggravated robbery, following his acquittal in federal court for bank robbery, violated the principles of double jeopardy. He contends the evidence presented at both trials was virtually the same. Therefore, he argues the state prosecution

was a "sham," and the dual sovereignty doctrine does not apply.

We first note that we do not have the record of the federal prosecution before us. Neither the federal indictment nor a transcript of the federal proceeding is in the record. Several state witnesses stated that they testified in the federal prosecution where defendant was acquitted. Without a proper record, however, we are unable to make any meaningful determination as to the evidence presented at the federal trial. The failure to present an adequate record precludes relief. State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

Nevertheless, even if we could make that determination, we find the dual sovereignty doctrine is applicable to the state prosecution. The long-standing doctrine regarding prosecution by dual sovereignties is expressed in United States v. Wheeler, 435 U.S. 313, 98 S Ct. 1079, 55 L.Ed.2d 303 (1978). "[A] federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one . . . [P]rosecutions under the laws of separate sovereigns do not . . . subject [the defendant] for the same offence to be twice put in jeopardy." *Id*. at 317. Tennessee courts specifically uphold and adhere to this doctrine. *See, e.g.,* Lavon v. State, 586 S.W.2d 112, 113-14 (Tenn. 1979); State v. Holmes, 995 S.W.2d 135, 139 (Tenn. Crim. App. 1998).

The defendant cites Bartkus v. Illinois, 359 U.S.121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), contending that where a state prosecution is influenced and controlled by the federal authorities, the trial does not represent an action by a separate and distinct sovereign; therefore, it is barred by double jeopardy. He claims that the cooperation between the Federal Bureau of Investigation and state law enforcement authorities indicates the state prosecution was a "sham and a cover for [the] federal prosecution." *Id.* at 124.

Defendant has not established that the state prosecution was a sham or a cover for the federal prosecution. The fact that similar testimony was given at both trials and the arrest occurred only a few days after the federal acquittal is not determinative of the double jeopardy issue. This issue has no merit.

## II.  JUROR DISQUALIFICATION

Defendant contends one of the jurors who served in the case was a convicted felon and, therefore, not qualified to sit as a juror. *See* Tenn. Code Ann. § 22-1-102(a)(1). Defendant seeks a new trial based upon this alleged error. We conclude defendant is not entitled to relief on this issue.

### A.  Factual Background

Subsequent to trial, defense counsel learned that one of the jurors had a prior felony conviction. Evidence adduced at the hearing on the motion for new trial indicated that the juror completed the appropriate juror questionnaire upon being summoned for jury service in Haywood County. The juror indicated on the questionnaire that he had a 1983 conviction for joyriding.

Joyriding was a felony at that time. *See* Tenn. Code Ann. § 55-5-104. However, the juror was never advised that he was disqualified from jury service and was ultimately chosen on the panel. There is no indication that the juror misled the court as to his qualifications, nor is there any indication that the juror falsely answered or was even asked any questions during *voir dire* concerning prior convictions.

## B. Analysis

Challenges to juror qualifications generally fall into two categories; namely, *propter defectum* and *propter affectum*. Partin v. Henderson, 686 S.W.2d 587, 589 (Tenn. App. 1984). Objections based upon general statutory disqualifications are considered *propter defectum* and generally must be challenged prior to the return of the jury verdict. State v. Akins, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993). On the other hand, objections based upon bias and partiality toward a party are classified as *propter affectum* and may be made after the return of the verdict. Durham v. State, 182 Tenn. 577, 582, 188 S.W.2d 555, 559 (1945); State v. Furlough, 797 S.W.2d 631, 652 (Tenn. Crim. App. 1990). In the case at bar, the objection based upon the statutory disqualification of a prior felony is considered in the category of *propter defectum*.

Although *propter defectum* challenges are generally considered waived if not raised prior to the verdict, there are exceptions. Waiver does not occur if bias is shown to exist, or if the juror answered falsely. State v. Dick, 872 S.W.2d 938, 946 (Tenn. Crim. App. 1993).

A similar scenario was presented in State v. Joseph D. Bishop, CCA No. 01C01-9309-CR-00333, Davidson County (Tenn. Crim. App. filed September 1, 1994, at Nashville), *perm. to app. denied* (Tenn. 1995). There a convicted felon served on the jury; however, this was not known or raised until after the verdict. Finding no bias or false answers given by the juror, this court concluded the failure to raise the issue prior to the verdict precluded any relief.

We distinguish the case at bar from State v. Bondurant, 4 S.W.3d 662 (Tenn. 1999), and State v. Lynn, 924 S.W.2d 892 (Tenn. 1996). These two cases involved flagrant, unreasonable and unnecessary deviations from the statutory procedures relating to jury selection. Bondurant, 4 S.W.3d at 668-69; Lynn, 924 S.W.2d at 898. Such deviations are not present in the case at bar; thus, there is no presumption of prejudice to the judicial process.

Under the general rule, the failure of the defendant to challenge this juror prior to the jury verdict waives the right to challenge the juror thereafter. Furthermore, neither exception to the general rule applies. There is absolutely no showing or any indication that the juror was biased or partial. Furthermore, there is absolutely no indication that the juror answered any questions falsely with regard to the prior conviction. For these reasons, the defendant is not entitled to relief on this issue.

## III. THEFT CHARGE

The defendant argues that theft of property over $10,000 is a lesser-included offense of aggravated robbery; thus, he can not be convicted of both offenses.

The record reveals the trial court properly merged the defendant's conviction for theft of property over $10,000 with his conviction for aggravated robbery. *See* State v. William Jason McMahan, C.C.A. 03C01-9707-CR-00262, Knox County (Tenn. Crim. App. filed March 31, 1999, at Knoxville). The judgment of the trial court only reflects convictions for aggravated robbery and escape. Furthermore, the sentencing hearing reveals the defendant was only sentenced for these two offenses.

## IV. CONCLUSION

In summary, we conclude (1) there has been no double jeopardy violation; (2) defendant is not entitled to relief based upon juror disqualification; and (3) the trial court properly merged the theft conviction into the aggravated robbery conviction. Thus, the judgment of the trial court is affirmed.