# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### January 7, 2014 Session

## STATE OF TENNESSEE v. RAMONE LAWSON

**Appeal from the Criminal Court for Shelby County**
**No. 12-00518    Robert C. Carter, Jr., Judge**

---

**No. W2013-00324-CCA-R3-CD  -  Filed March 19, 2014**

---

The Defendant, Ramone Lawson, was convicted by a jury of one count of first degree premeditated murder, two counts of attempted first degree murder, and two counts of employing a firearm during the commission of a dangerous felony. The Defendant was sentenced to an effective sentence of life imprisonment plus six years. In this direct appeal, the Defendant argues that the evidence is insufficient to support his convictions and that the trial court erred when it instructed the jury about the possible sentences and release eligibility dates for first degree murder. Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Stephen C. Bush, District Public Defender; Harry E. Sayle, III (on appeal), Jane Sturdivant and James Hale (at trial), Assistant Public Defenders, for the appellant, Ramone Lawson.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Colin Campbell and Tracye Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

This case arises from a June 30, 2011 shooting spree in Fox Hollow Apartments in Memphis. From these events, a Shelby County grand jury charged the Defendant with first degree premeditated murder of Martezz Evans, attempted first degree murder of Tristan Mathis, attempted first degree murder of Aaron Wiggins, and two counts of employing a

firearm during the commission of a dangerous felony. See Tenn. Code Ann. §§ 39-12-101, -13-202, -17-1324(b). The Defendant proceeded to trial.

The proof at trial revealed the following facts. On June 30, 2011, the three victims went to Fox Hollow Apartments to visit some girls. While waiting for the females to finish dressing, the group decided to go outside and sit on a green electrical box. Destiny Wright, who lived in the apartment complex, walked by and saw the men sitting there. Because she was unfamiliar with the men, she asked them who they were and where they lived. The men "brush[ed] her off." At that time, the group saw an individual named "Rico"[1] walking in their direction.

Soon thereafter, the Defendant came from behind a wall. No words were exchanged between the men, other than the Defendant saying to the victims, "yea nigga now what's up?", before he started shooting with a forty-caliber automatic pistol. An individual named "Skinny G" was also present on the scene. When the shooting started, all three of the victims jumped up off the electrical box. Mathis and Wiggins were able to run away from the Defendant. However, Evans, who was closest to the Defendant when the Defendant emerged from behind the wall, "threw his hands up" in the air. Evans was then shot three times, once in the left eye, once in the left forearm, and once in the back of neck, and he fell to the ground, where he died from his injuries. The Defendant emptied his weapon, running out of bullets before he ceased firing on the group. Six forty-caliber shell casings, one bullet fragment, and one projectile were found on the scene. Although Mathis was able to run away, he suffered a gunshot wound to the foot; Wiggins stated that his right forearm was grazed by a bullet.

Ms. Wright provided a description of the shooter that was similar to the Defendant's appearance. Wiggins and Mathis also identified the Defendant as the lone shooter. After the Defendant was developed as a suspect and brought in for questioning by the police, he admitted to being present at the scene but denied any involvement. While in custody, the Defendant placed a phone call from the jail. During this call, the Defendant can be heard saying to the other individual on the line, "what they got me for is true." When the Defendant was questioned the following day for a second time, he again denied any involvement in the shooting.

The State developed proof of a prior altercation which occurred some days earlier at a local Citgo gas station. Evans, Mathis, and Wiggins were at that gas station, when Evans and Skinny G got into a verbal disagreement. Rico then walked up and said, "What's up, Mafia?" On this day, Evans and Mathis ended up in a physical confrontation with Skinny

---

[1] Several individuals are only identified by their "street names" at trial.

G and Rico. According to Mathis, he and Evans "got the best of" Rico and Skinny G during the fight. Moreover, there was also proof at trial that Rico and Evans were members of rival gangs.

Following the conclusion of proof, the jury convicted the Defendant as charged. At the sentencing hearing which followed, the trial court sentenced the Defendant to life imprisonment with the possibility of parole for the first degree murder conviction, fifteen years for each attempted murder conviction, and six years for each employing a firearm during the commission of a dangerous felony conviction. The murder and attempted murder sentences were ordered to be served concurrently to one another, and the armed dangerous felony sentences were likewise to be served concurrently to one another. However, the trial court ran the two groups of sentences consecutively to each other, resulting in an effective sentence of life plus six years. This timely appeal followed.

## ANALYSIS

On appeal, the Defendant challenges the sufficiency of the evidence and the trial court's instructions to the jury on the possible sentences and release eligibility dates for first degree murder. We address each in turn.

### I. Sufficiency of the Evidence

First, the Defendant challenges the sufficiency of the evidence supporting his convictions for first degree premeditated murder and attempted first degree murder,[2] arguing that the evidence regarding premeditation was not sufficient to uphold his convictions. Specifically, he contends that there was no "evidence of motive from which to infer premeditation" and notes the following: there was no proof that he knew the victim Martezz Evans or that he was accompanied by Rico and Skinny G on the day of the shooting; and he was not present during the prior altercation at the Citgo gas station. The State responds that the evidence presented at trial sufficiently established the element of premeditation.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in

---

[2] He does not challenge his convictions for employing a firearm during the commission of a dangerous felony on appeal.

testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "is the same whether the conviction is based upon direct or circumstantial evidence." Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

First degree murder, in this instance, is defined as "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a).

> "[P]remeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time.

Tenn. Code Ann. § 39-13-202(d). Criminal attempt, as charged to the jury in this case, occurs when a person acts with the kind of culpability otherwise required for the attempted offense and "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." See Tenn. Code Ann. § 39-12-101(a)(3).

The element of premeditation is a factual question to be decided by a jury from all the circumstances surrounding the killing. State v. Davidson, 121 S.W.3d 600, 614 (Tenn. 2003). Although a jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. Bland, 958 S.W.2d at 660. Our supreme court has held that factors demonstrating the existence of premeditation include, but are not limited to, the following: declarations of the intent to kill, procurement of a weapon, the use of a deadly

weapon upon an unarmed victim, the fact that the killing was particularly cruel, infliction of multiple wounds, the making of preparations before the killing for the purpose of concealing the crime, destruction or secretion of evidence, and calmness immediately after the killing. State v. Jackson, 173 S.W.3d 401, 409 (Tenn. 2005); State v. Nichols, 24 S.W.3d 297, 302 (Tenn. 2000). Additional factors cited by this court from which a jury may infer premeditation include lack of provocation by the victim and the defendant's failure to render aid to the victim. See State v. Lewis, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000). Further, "[e]stablishment of a motive for the killing is a factor from which the jury may infer premeditation." State v. Leach, 148 S.W.3d 42, 54 (Tenn. 2004).

The Defendant contends that the State failed to establish any motive for the killing and, therefore, failed to establish premeditation. The Defendant fails to take into account the evidence of the individuals' gang affiliation which established a possible motive for the shooting spree, i.e., retaliation for the prior altercation at the Citgo gas station. Moreover, motive is not the only factor sufficient to establish premeditation. The proof further reflected that the victims were unarmed; that there was no evidence of provocation on the day of the shooting, in fact, one of the victims put his hands in the air as a sign of surrender; and that the Defendant fired multiple times, emptying his weapon. Given this evidence, we conclude that it was reasonable for the jury to find that such actions evinced a premeditated intent to kill the victims. See, e.g., State v. Shakir Adams, No. W2006-02038-CCA-R3-CD, 2008 WL 1891451, at *6 (Tenn. Crim. App. Apr. 29, 2008) (concluding that the evidence was sufficient to support a finding of premeditation where the defendant used a deadly weapon to kill the unarmed victim and a possible motive for the murder of the victim was retaliation for the prior murder of a gang associate).

*II. Jury Instruction*

Next, the Defendant argues that the trial court "erred in instructing the jury on the penalty and release eligibility for first degree murder." The Defendant notes that he raised the issue in his motion for new trial but failed to contemporaneously object to the erroneous instructions at trial. He asks this court to grant him plain error relief and order a new trial. The State responds that the Defendant has failed to establish all five plain error factors and is, therefore, not entitled to relief.

Rule 30(b) of the Tennessee Rules of Criminal Procedure provides that failure to make an objection to the content of an instruction "does not prejudice the right of a party to assign the basis of the objection as error in a motion for a new trial." Tenn. R. Crim. P. 30(b). An erroneous or inaccurate jury charge, as opposed to an incomplete jury charge, may be raised for the first time in a motion for a new trial and is not waived by the failure to make a contemporaneous objection. State v. Faulkner, 154 S.W.3d 48 (Tenn. 2005) (citing State v. Lynn, 924 S.W.2d 892, 898-99 (Tenn. 1996)). If a jury instruction is erroneous or the trial

judge fails to give a requested instruction, a defendant has two options: he can call it to the trial judge's attention immediately, or he can sit on his objection and allege it as a ground in support of his motion for a new trial. State v. Haynes, 720 S.W.2d 76 (Tenn. Crim. App. 1986). Because the Defendant is challenging an erroneous charge, Rule 30 allows the issue to be raised for the first time at the motion for new trial stage, and therefore, the Defendant has not waived review of the issue and plain error review is unnecessary. See, e.g., State v. Steven Allen Jones, No. E2006-01952-CCA-R3-CD, 2007 WL 4226875, at *8 (Tenn. Crim. App. Dec. 3, 2007) (concluding that the defendant properly raised the objection in his motion for new trial, and therefore, the issue was not waived and was thus available for plenary appellate review).

The Defendant submits that the "offensive instruction in this case was given six times." He notes the following "three times" during the voir dire examination of the entire venire:

> THE COURT: Murder first degree, that's one of the charges that you will consider in this case is a unique offense under our Tennessee law. There are three punishments for murder in the first degree - the death penalty, life without parole, and life with the possibility of parole.
> In any murder case, life with the possibility of parole is the sentence in the event that somebody is found guilty unless there are certain circumstances that occur that make it a special type of case. This is not one of those cases. That's - I guess I should have gone over that a little more.
> In the event the jury finds, beyond a reasonable doubt, that the defendant is guilty of murder first in this case, the sentence will automatically be life with the possibility of parole. It will not be one of those other two just for reasons that we don't need to concern ourselves with. I should have made that clearer.

He submits that the error occurred "twice" in the trial court's final instructions to the jury, when the court gave the following instruction:

> All right. If you find, from the proof, beyond a reasonable doubt, that the defendant is guilty of murder in the first degree, then the defendant will automatically be sentenced to life imprisonment with the possibility of parole; but you shall not consider the punishment for this offense at this time.
> And what that means, ladies and gentleman, in some instance we have a second hearing if the jury finds someone guilty - as I told you the other day, you would also have to fix one of the three punishments. That will not be done in this case - those other punishments will not be considered in this case. So,

if the jury finds the defendant guilty of murder in the first degree, then the only punishment can be life with the possibility of parole. That's why you will not have a second sitting.

The first paragraph of this final charge was also included in the written instructions, being the sixth instance to which the Defendant refers.

At the motion for new trial hearing, the trial court addressed the Defendant's allegation of erroneous jury instructions and ruled as follows:

And as to ground [two] I'm going to rule that that was not improper. This is a murder first degree case and I correctly instructed them that there were three possible penalties but I think I further instructed them that they were not to consider in any way.
The penalty of their job was to find guilt or innocence in this case, or guilt or lack of guilt more correctly, in that matter and I do not find error in the matter . . . .

We must disagree with the trial court and conclude that its remarks to the prospective jurors and the later instruction to the jury about the penalties for first degree murder were in error. The pertinent statute on the subject provides,

(b) In all contested criminal cases, except for capital crimes that are governed by the procedures contained in §§ 39-13-204 and 39-13-205, and as necessary to comply with the Tennessee Constitution, article VI, § 14 and § 40-35-301, the judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on possible penalties for the offense charged nor all lesser included offenses.

Tenn. Code Ann. § 40-35-201(b). Nonetheless, as the State points out, this court has reviewed similar fact patterns on several prior occasions and found that the statements were harmless. See, e.g., State v. Derek Willamson, No. M2010-01067-CCA-R3-CD, 2011 WL 3557827, at *4-6 (Tenn. Crim. App. Aug. 12, 2011) (determining that a trial court's remarks to the jury venire that the State was not seeking the death penalty or life imprisonment without the possibility of parole, therefore, should the jury find the defendant guilty of first-degree murder, an automatic life-sentence would be imposed was harmless error); State v. Charles Ray Allen, No. M1999-00818-CCA-R3-CD, 2000 WL 1649507, at *7-8 (Tenn. Crim. App. Nov. 3, 2000) (concluding that a trial court's telling potential jurors during voir dire and again during jury instructions that the State was not seeking life without the possibility of parole and that a guilty verdict would result in the defendant's receiving a life

sentence was harmless error); State v. Edward Pinchon, No. M1999-00994-CCA-R3-CD, 2000 WL 284071, at *4 (Tenn. Crim. App. Mar. 17, 2000) (concluding that a trial court's instructing the jury that the State was not seeking life without the possibility of parole and that a guilty verdict would result in the defendant's receiving a life sentence was harmless error).

In Pinchon, the trial judge instructed the jury that, if the defendant was convicted of first degree murder, he would receive a sentence of life imprisonment with the possibility of parole. 2000 WL 284071, at *1. This court held that, when the trial court so errs, "the defendant must demonstrate that, but for the erroneous instruction, there is a reasonable probability the jury would have acquitted him of first degree murder and found him guilty of the lesser offense . . . ." Id. at *4. In Allen, the trial court instructed the jury pool at voir dire that the state was not seeking the death penalty or life imprisonment without parole, therefore, should the jury find the defendant guilty of first degree murder the "automatic sentence . . . would be an automatic life sentence." 2000 WL 1649507, at *7. The trial court also repeated this in the jury charge. Id. at *7. In that case, this court held that the "trial court's error in instructing the jury about the penalties for first degree murder does not 'affirmatively appear to have affected the result of the trial on the merits.'" Id. at *8.

Despite the Defendant's attempt to distinguish his case from this line of jurisprudence, submitting that his jury was "fairly bludgeoned with the erroneous" instruction due to the instances cited above, we conclude that the case before us warrants a similar conclusion as those that have come before. The trial court instructed the jury on first degree premeditated murder, attempted first degree murder, second degree murder, attempted second degree murder, voluntary manslaughter, attempted voluntary manslaughter, reckless homicide, and criminally negligent homicide. The State's proof was that the Defendant attacked the unarmed victims with an automatic weapon. The Defendant was accompanied by Rico, who had recently been beaten up by the victims at the Citgo gas station. Rico and the victim Evans were identified as being members of rival gangs. The Defendant emerged from behind a wall and unloaded the weapon, shooting at the victims multiple times, and only ceased firing when he ran out of bullets. Evans raised his hands as a sign of surrender, and the other two victims fled. The Defendant shot Evans in the face, arm, and back of the neck, killing him; he shot Mathis in the foot and grazed Wiggins on the forearm. The proof was more than sufficient to support the jury's verdicts of guilt. The record contains no proof that the jury would have convicted the Defendant of any of the lesser included offenses, or acquitted him, had the challenged information not been provided. Because the trial court's error in instructing the jury about the penalties for first degree murder does not affirmatively appear to have affected the result of the trial on the merits, the Defendant is not entitled to a new trial on this ground. This issue is without merit.

-8-

## CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the Defendant's convictions.

_____
D. KELLY THOMAS, JR., JUDGE