IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2004 Session

## STATE OF TENNESSEE v. DARYL EUGENE FORTNER

**Direct Appeal from the Circuit Court for Montgomery County
No. 40100012    Michael R. Jones, Judge**

_____

**No. M2003-00950-CCA-R3-CD - Filed June 25, 2004**

_____

Following a jury trial, the defendant was convicted of two counts of attempted first degree murder, Class A felonies. He was also convicted of one count of aggravated burglary, a Class C felony. The defendant contends on appeal that (1) the evidence was insufficient to establish the requisite intent required for committing first degree murder, (2) the trial court erred in instructing the jury on diminished capacity, and (3) the sentence was excessive. Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Jack A. Butler, Nashville, Tennessee, for the appellant, Daryl Eugene Fortner.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Daniel Brollier, Jr., Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

A Montgomery County jury convicted the defendant, Daryl Eugene Fortner, of two counts of attempted first degree murder, Class A felonies, of his wife and step-son. He was also convicted of one count of aggravated burglary, a Class C felony. Following a sentencing hearing, the trial court sentenced the defendant to twenty years in the Tennessee Department of Correction for each attempted first degree murder conviction and five years for the aggravated burglary conviction. The trial court ordered that the twenty-year sentences be served consecutively to each other, with the five-year sentence to be served concurrently, for a total effective sentence of forty years. The defendant timely filed his notice of appeal. He contends on appeal that (1) the evidence was insufficient to establish the requisite intent required for committing first degree murder, (2) the trial court erred in

instructing the jury on diminished capacity, and (3) the sentence was excessive. Finding no reversible error, we affirm the judgments of the trial court.

## Facts

The defendant, Daryl Fortner, and one of the victims, Tina Fortner, were married in August 1999. Soon after they married, the couple began having problems. The couple purchased a mobile home and lived together in Joelton, Tennessee. In January 2000, Mrs. Fortner's adult son, Cory Edwards, moved in with the couple. The marital problems continued, and Mrs. Fortner obtained an order of protection against the defendant in June or July 2000. The mobile home was moved to Clarksville, Tennessee where the defendant again moved in with his wife and her son. However, the couple's problems continued. The defendant moved out again, and in October 2000, he made threats that he was going to "get" Mrs. Fortner and her son and was "going to burn [their] trailer to the ground."

Late one night in November 2000, a loud noise awakened Mrs. Fortner while she and her son were asleep in the mobile home. She walked into the kitchen area of the mobile home and noticed that the glass on the back door was cracked. Suddenly, a piece of concrete crashed through the glass of the back door. The defendant reached through the broken glass, unlocked the door, and came inside. As the victim yelled for her son, the defendant placed a full can of gasoline down on the floor in the utility room. He then shoved Mrs. Fortner into her bedroom and pushed her down on the bed. The defendant turned off the bedroom light. Mrs. Fortner immediately got up from the bed to turn on the nightstand light. As she arose from the bed, she heard a gunshot and saw a flash of light. Upon turning on the light, she saw the defendant standing near the foot of the bed with a gun still pointing toward the pillow where her head had been seconds earlier. The bullet fired from the gun went into the pillow where the victim had been lying.

After hearing the commotion in the other room, Edwards came down the hall to his mother's bedroom. The defendant pointed the gun at Edwards and ordered him into the bedroom. As all three of them were in the bedroom, the defendant began telling them that he was going to kill them. At some point, the defendant dropped a glove on the floor that he had apparently brought to the scene. While the defendant and Mrs. Fortner were discussing the situation, she told the defendant that she wanted a cigarette. The defendant told Edwards to go into the other room and bring back a cigarette for his mother. Edwards complied, during which time the defendant was still pointing the gun at them and telling them that he was going to kill them. The trio soon managed to move into the living room. The defendant pushed Edwards down into a chair, pulled out a package containing fifty feet of nylon rope, and told Mrs. Fortner to tie up her son. She refused and went toward the front door. The defendant grabbed her from behind and hit her in the head with the gun. Edwards lunged from the chair and grabbed the defendant. The two men began wrestling on the floor of the living room. As the struggle continued, Edwards told his mother to go for help. Mrs. Fortner ran outside and began calling for help. While the defendant and Edwards were wrestling for control of the gun, a shot was fired striking Edwards in the arm. The defendant then left the mobile home and drove away.

Tyler Barrett, a Clarksville police officer, responded to a call about the shooting. He received a description of the suspect and his vehicle. Barrett passed a vehicle matching the description and turned around to follow the vehicle. Before the officer initiated a stop, the vehicle pulled over because of a flat tire. Unsure whether this was the same vehicle involved in the shooting, Barrett cautiously pulled in behind the vehicle. As the defendant attempted to exit the vehicle, the officer ordered him to get back inside. While Barrett called in the license plate number of the vehicle, the defendant jumped out and began running toward a wooded area. Barrett pointed his weapon at the defendant and ordered him to stop. The defendant complied and was taken into custody. A .25-caliber handgun was found in the defendant's vehicle. After removing the defendant from the backseat of the police car, officers discovered approximately thirty rounds of .25-caliber ammunition the defendant had dropped onto the floor while being transported.

At trial, the defense was centered around a theory of diminished capacity. The defendant did not deny that he was the perpetrator of the alleged offenses. The defendant's son, Clint Fortner, and his daughter-in-law, Tammy Fortner, testified that the defendant acted more like a child than an adult. They said that the defendant liked to play with toys and video games. Clint Fortner testified that his father purchased video games and children's movies for his own enjoyment. Tammy Fortner testified that the defendant had trouble with reading, writing, and math.

Dr. William Anderson, an expert in forensic psychology, testified on behalf of the defense. Dr. Anderson examined the defendant and determined that he functioned at a third or fourth grade level. His testing indicated that the defendant had an IQ of 74, according to the Wexler system, and an IQ of 58, according to the revised Wexler system. He also determined that the defendant was suffering from mild depression. According to Dr. Anderson, an IQ of 58 fits into the category of mild mental retardation. The State offered testimony by Dr. Melinda Lafferty, an expert in forensic psychology, as rebuttal evidence. Dr. Lafferty determined that the defendant exhibited no evidence of severe mental disease or defect.

Through the defendant's wife, Tina Fortner, the State introduced several cards and letters written by the defendant. Mrs. Fortner testified that she had never observed any indications of problems with the defendant's mental capacity. Marvin Baskin, the general manager where the defendant was employed, also testified on behalf of the State. He stated that the defendant had worked for him approximately four or five years and was a good employee. The defendant was a route delivery driver responsible for delivering products to various restaurants. While performing his job, the defendant handled money and invoices.

The jury convicted the defendant of two counts of attempted first degree murder, Class A felonies, and one count of aggravated burglary, a Class C felony. Following a sentencing hearing, the trial court sentenced the defendant to twenty years in the Tennessee Department of Correction for each attempted first degree murder conviction and five years for the aggravated burglary conviction. The trial court ordered that the twenty-year sentences be served consecutively to each other, with the five-year sentence to be served concurrently, for a total effective sentence of forty years.

**Analysis**

I. Sufficiency of the Evidence

The defendant contends on appeal that the evidence was insufficient to establish the requisite intent required for committing first degree murder. When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This Court will not re-weigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

The defendant argues that the evidence was insufficient to establish that he intended to murder the victims. According to the defendant's theory, even though he had numerous opportunities to actually kill the victims, he did not. Therefore, he did not intend to murder them. We find the defendant's argument unpersuasive.

Tennessee Code Annotated section 39-13-202(a)(1) defines first degree murder as "[a] premeditated and intentional killing of another." The following definition of criminal attempt is given in Tennessee Code Annotated section 39-12-101:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct of the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

(c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

The evidence shows that the defendant drove to the victims' residence with a loaded gun, at least thirty rounds of ammunition, gloves, a rope, and a full can of gasoline. The defendant broke into the residence, forced Mrs. Fortner into the bedroom, and pushed her onto the bed. After turning out the light, the defendant fired the gun at the same location where the victim was located moments earlier. While holding her and her son at gunpoint, he repeatedly told them that he was going to kill them. The defendant pushed Edwards into a chair and told Mrs. Fortner to tie him up. When she refused and attempted to escape, he struck her in the head with the gun. Edwards grabbed the defendant and struggled for the gun while Mrs. Fortner escaped and summoned help. While the two men wrestled, Edwards was shot. Only at this point did the defendant attempt to flee. We conclude that the evidence was sufficient to establish intent.

II. Jury Instructions

The defendant next contends that the trial court erred in instructing the jury on diminished capacity. The trial court gave the following instruction concerning diminished capacity:

The state must prove beyond a reasonable doubt the culpable mental state of the accused. Culpable mental state means the state of mind of the accused at the time of the offense. This means that you must consider all of the evidence to determine the state of mind of the accused at the time of the commission of the offense. The state of mind which the state must prove is contained in the elements of the offenses as outlined in these instructions above.

In this case, you have heard evidence that the defendant might have suffered from a mental defect or condition which could have affected his capacity to form the culpable mental state required to commit a particular offense.

If you find from the evidence that the defendant's capacity to form a culpable mental state may have been affected, then you must determine beyond a reasonable doubt what the mental state of the defendant was at the time of the commission of the offense to determine of which, if any, offense he is guilty.

Whether the defendant had the capacity to form the culpable mental state required to commit a particular offense is not to be confused with the defense of insanity.

Under the United States and Tennessee Constitutions, a defendant has a right to trial by jury. State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000). A defendant also has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions. Id. In evaluating claims of error in jury instructions, courts must remember that "'jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning.'" State v. Vann, 976 S.W.2d 93, 101 (quoting Boyde v. California, 494 U.S. 370, 380-81, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990)). Therefore, we review each jury charge to determine if it fairly defined the legal issues involved and did not mislead the jury. See State v. Hall, 958 S.W.2d 679, 696 (Tenn. 1997).

The State argues that this issue has been waived because the defendant failed to make a contemporaneous objection to the jury instruction. See Tenn. R. App. P. 36(a). However, we conclude that the issue is properly before us. Although counsel must raise a contemporaneous objection to an incomplete jury charge, State v. Haynes, 720 S.W.2d 76, 84-85 (Tenn. Crim. App. 1986), there is no requirement for an objection to the inclusion of an erroneous instruction or otherwise inaccurate charge. State v. Lynn, 924 S.W.2d 892, 898-99 (Tenn. 1996). The defendant included the issue in his motion for new trial, and he may now seek appellate review.

The defendant conclusively states, without citing any relevant authority, that the instruction given by the trial court concerning diminished capacity was erroneous. Specifically, the defendant takes issue with the language "might have suffered." We have found no persuasive authority that supports the defendant's contention. In fact, the instruction given by the trial court was taken verbatim from the Tennessee Pattern Jury Instructions. See T. P. I. Crim. No. 42.22 (4th ed. 1995); State v. Coulter, 67 S.W.3d 3, 69-70 (Tenn. Crim. App. 2001) (approving use of almost identical instruction)). This issue is without merit.

III. Sentencing

The defendant contends on appeal that his sentence is excessive. This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating

factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

The defendant submits that the trial court erred by not considering his potential for rehabilitation in determining the length of his sentence. However, as the State correctly points out, the record establishes that the trial court did consider the defendant's potential for rehabilitation. The trial court noted that the defendant was on probation for committing an assault against his wife when he committed the current offenses. Additionally, the defendant had been instructed that he could not possess firearms because of the domestic violence gun law. In spite of this instruction, the defendant obtained a handgun. The record adequately establishes that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, our review is *de novo* with a presumption of correctness.

The defendant next contends that the trial court erred in the application of mitigating and enhancement factors. The weight given to each enhancement or mitigating factor is in the discretion of the trial court, assuming the trial court has complied with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002). The statutes prescribe no particular weight for an enhancement or mitigating factor. State v. Gosnell, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). A defendant's sentence "is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years." State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)). Additionally, the wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000).

The trial court found that one mitigating factor applied: "The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense." See Tenn. Code Ann. § 40-35-113(8). The defendant argues that the trial court erred in its application of factor (8) because it "never annunciated how this reduced culpability was being applied to sentencing." We disagree with the defendant. The record demonstrates the trial court clearly stated that it was applying this mitigating factor to all three offenses.

The defendant also contends that the trial court erred in failing to apply mitigating factor (11): "The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." See Tenn. Code Ann. § 40-35-113(11). The trial court found that there was nothing unusual about the circumstances of these offenses. In fact, the defendant's only intent was to violate the law. We agree with the trial court.

The trial court found that two enhancement factors applied in this case. First, the court found that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition

to those necessary to establish the appropriate range." See Tenn. Code Ann. § 40-35-114(1).[1] The defendant does not challenge the application of factor (1), and we find that the record supports the trial court's application to all three offenses. The trial court also found that "[t]he defendant possessed or employed a firearm . . . during the commission of the offense[s]." See id. -114(9). While the defendant does not contest that he possessed a firearm, he argues that the court improperly applied this factor because the defendant was in violation of the domestic violence gun law. Contrary to the defendant's argument, the trial court stated that it was giving this factor greater weight than usual because the defendant was in violation of the domestic violence gun law and not simply applying it because of this fact. Possession of a firearm is not inherent in the convicted offenses; therefore, its application is warranted. We conclude that the trial court did not err in applying enhancement factor (9).
.

The defendant next argues that the sentences for the attempted first degree murder convictions should have been less than twenty years. Attempted first degree murder is a Class A felony. As a Range I offender, the applicable sentencing range for the defendant was fifteen to twenty-five years. Tenn. Code Ann. §40-35-112(a)(1). The trial court properly applied both enhancement and mitigating factors in this case. "Should there be enhancement and mitigating factors for a Class A felony, the court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Id. -210(e). After applying the mitigating and enhancement factors, the trial court sentenced the defendant to twenty years, the presumptive sentence for Class A felonies. The defendant has failed to show that the trial court erred in its application of mitigating and enhancement factors.

Lastly, the defendant contends that the trial court erred in imposing consecutive sentencing. Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;
>
> (3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

---

[1] Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). This is listed as factor (1), thus renumbering the previous factors as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The State submitted that criteria (4) (dangerous offender) and (6) (committed while on probation) applied in this case. The trial court found that only the dangerous offender provision applied. Therefore, the court ordered that the sentences for attempted first degree murder be served consecutively to each other. If the court concludes the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are unnecessary for the other categories of Tennessee Code Annotated section 40-35-115(b). State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999).

The defendant argues that the trial court erred in finding that he was a dangerous offender. According to the defendant, the trial court failed to comply with Wilkerson. After a thorough review of the record, we conclude that the court did make the required findings under Wilkerson. Additionally, the record adequately supports the finding by the trial court that the defendant is a dangerous offender. This issue is without merit

Although the trial court found that criteria (6) (offenses committed while on probation) was not applicable, we disagree. At the sentencing hearing, the State introduced a certified copy of a general sessions court disposition indicating that the defendant pled guilty to simple assault on July 24, 2000. As a result, he was placed on supervised probation for eleven months and twenty-nine days. He committed the current offenses in November 2000. Clearly, he was on probation when he committed the current offenses. Therefore, consecutive sentencing was justified under Tennessee Code Annotated section 40-35-115(b)(6). The defendant has failed to show that the trial court erred in ordering consecutive sentencing.

**Conclusion**

Based on the foregoing reasoning and our review of the record as a whole, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE